POLLINA *v.* STATE MUTUAL RODDED FIRE INSURANCE CO.

1. INSURANCE—WAIVER OF ARBITRATION CLAUSE—PRESUMPTIONS.
   When insurance company absolutely denies liability, claimant may bring action without first submitting claim to arbitration; however, there must be equivalent of absolute denial of liability before waiver of arbitration clause in policy may be presumed therefrom.

2. SAME.
   Where altercation arose between insured and mutual insurance company as to whether certain machinery destroyed by fire was covered by policy (insurer admitting liability for certain amount but denying liability for said machinery, and insured insisting that said machinery be included), denial of liability by insurer because of said claim, and expressly calling insured's attention to arbitration clause in its charter, was not such absolute denial of liability as to warrant presumption of waiver of arbitration clause.

Error to St. Clair; Robertson (William), J. Submitted October 23, 1929. (Docket No. 58, Calendar No. 34,576.) Decided December 4, 1929.

Assumpsit by Joe Pollina and others against the State Mutual Rodded Fire Insurance Company of Michigan, a corporation. From judgment for plaintiffs, defendant brings error. Reversed, and remanded to circuit court with instructions.

*John B. McIlwain* and *Laurie O. Telfer,* for plaintiffs.

*Kinnane & Leibrand,* for defendant.

BUTZEL, J. Defendant, a domestic farmers' mutual fire insurance company, carried insurance on plaintiffs' buildings and certain personal property situated on plaintiffs' farm near Port Huron, Michigan.

Plaintiffs' buildings, together with the contents thereof, were destroyed by fire on September 28, 1928. Six days later the president and secretary of the defendant company came to plaintiffs' premises to adjust the loss. There was a disagreement in regard to a number of items. The adjusters refused to include in the proof of loss the value of some of the dairy machinery, including a water tank on top of the building. They claimed that they were real fixtures belonging to the building.

An altercation arose as to whether an ice machine which was piped into an iceless refrigerator was covered under the personal property clause of the insurance policy. The machine was cooled by ammonia and operated by electric current. Plaintiffs claimed it was a "farm implement" under which

title a large part of the personal property was covered in the policy. Defendant's officers as adjusters stated that although they would include the ice machine in the proof of loss at a valuation of $900, they did not think the company was liable for this item. Plaintiffs insisted that the insurance company should pay for the ice machine.. Its original cost was $975 and it was almost new. The total loss, including the ice machine valued at $900, amounted to $5,373.08. Plaintiffs signed and acknowledged the proof of loss for this amount.

On October 12, 1928, plaintiffs wrote defendant that they insisted upon payment of the ice machine at a valuation of $975. Thereupon, defendant's secretary replied as follows:

"October 25, 1928.

"Joe and B. Pollina,
"Port Huron, No. 1,
"Michigan.
"*Dear Sirs:*

"Your letter of October 12th, stating that you would expect this company to pay for the ice machine lost in your fire was duly received, and wish to say that we have gone into the matter carefully and find we are not liable for said machine and must deny liability and do hereby deny liability and refuse payment of your loss because of property listed for which we are not liable and for more property listed than was lost in the fire and also for making claim for all property lost when a part of said property was owned by a third party, Beldassare Pollina. I wish to call your attention to Article 5 of the charter, copy of which is enclosed herewith.

"Very truly yours,
"W. T. Lewis, Secretary."

A copy of defendant's charter was inclosed in this letter. Article 5 of defendant's charter referred to in the letter provides as follows:

"Article V.

"(a)  In case the disagreement with the loser of property regarding any matter pertaining to a loss or damage or the payment thereof, said matter in difference shall be determined by arbitration. In case of such disagreement the loser shall notify the secretary in writing of his or her desire to appeal to the arbitration committee, and at the same time deposit $20 with the secretary to pay his or her share of the expense of such arbitration. Provided said appeal shall not be granted unless made within 30 days from the date of said disagreement (date the secretary notified the insured of the company's decision). If the appeal is not made within the 30 days then in such case the findings of the president and secretary shall be final, binding and conclusive as to both the loser and the company.

"(b)  The secretary shall, within 30 days from the receipt of such notice, give notice to the loser in writing, designating the time and place of meeting, giving the loser an opportunity to appear before the arbitration committee within 30 days from the date of notice, and present such evidence as he may have to establish the justness and validity of such claim, and said committee shall hear, try and decide upon all matters pertaining to said claim and the payment thereof and the validity of the application and policy, and its decision shall be final, binding and conclusive upon said loser and the company and no suit in law or equity shall be commenced or maintained by any loser or beneficiary to determine said matter in difference.

"(c)  In case of arbitration each party shall pay the expense of his or its own witnesses and attorneys and should the arbitration committee award the loser

the amount demanded in the proof of loss, then the $20 deposited by the loser shall be returned to him.''

Plaintiffs, upon receipt of this letter of October 25, 1928, assumed that it was no longer necessary for them to submit their claim to arbitration. They began suit on November 2, 1928, and recovered a judgment for $5,927.88. This was $554.80 more than the amount stated in the proof of loss.

The question was raised at the trial as to whether plaintiffs, instead of bringing suit, were not obligated to submit their claim to arbitration, in accordance with the charter of defendant. The circuit judge held that the defendant, through its denial of all liability in its letter of October 25, 1928, had waived the provisions of the arbitration clause in Article 5 of its charter, and that plaintiffs had the right to bring suit without delay.

As a rule, when an insurance company absolutely denies liability, the claimant may bring suit without first submitting the claim to arbitration. *First State Savings Bank of Croswell* v. *Insurance Co.*, 244 Mich. 668; *Maki* v. *Insurance Co.*, 232 Mich. 295. There must, however, be the equivalent of an absolute denial of the liability so that a waiver of the arbitration clause in the policy may be presumed therefrom. In the present case, there can be no such presumption. The denial of liability expressly called attention to the arbitration clause and showed plaintiffs their remedy.

Article 5 of the defendant's charter, which was made part of the policy, provided for arbitration in case of disagreement with the loser of property regarding any matter ''pertaining to a loss or damage or the payment thereof.'' Plaintiffs' attention was specifically called to this clause of the charter

which was set forth in their policy. In taking out the insurance with the defendant, plaintiffs had specifically agreed to comply with the provisions of the charter and the by-laws of defendant. The letter of defendant's secretary did not relieve them of their contractual obligations to submit their matters "pertaining to a loss or damage or the payment thereof" to arbitration. This clause has been construed by this court in the case of *Jackson* v. *Insurance Co.*, 217 Mich. 301.

Defendant in its brief only stressed the assignment of error discussed in this opinion. Its counsel in his oral argument stated that the company would be willing to pay the amount of $5,373.08 originally claimed in the proof of loss, if the $900 for the ice machine included therein were deducted. This would leave the sum of $4,473.08.

The judgment is reversed. The case is remanded to the lower court with instructions to enter a judgment for plaintiffs in the sum of $4,473.08. Defendant shall recover costs.

North, C. J., and Fead, Wiest, Clark, McDonald, Potter, and Sharpe, JJ., concurred.